IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Stacey L. Carna

   Plaintiff,

 v.

Teays Valley Local School District, et al.

   Defendants.

Case No. 2:12-cv-74

Judge Graham

Magistrate Judge King

OPINION AND ORDER

  This matter is before the court on *sua sponte* consideration of whether plaintiff has stated a claim for conspiracy against defendants Shannon Bumgarner, Robert Thompson, Jeff Sheets, and Teays Valley Local School District on which relief may be granted.[1]  Plaintiff Stacey Carna (Carna) brings this action against the Teays Valley Local School District and five school district officials and employees.  Carna's complaint asserts four claims: defamation, false light invasion of privacy, tortious interference with contractual and business relations, and civil conspiracy.  (Complaint, Doc. 1 at 11-13.)  In an order of July 10, 2012, the Court denied defendants' motion for judgment on the pleadings on plaintiff's civil conspiracy claim.  In that order, the Court expressed doubt as to whether plaintiff had stated a claim for civil conspiracy against four of the six defendants and ordered supplemental briefs on the issue.  In their brief, defendants seek dismissal of the conspiracy claim against defendants Bumgarner, Thompson, Sheets, and Teays Valley Local School District.  (Doc. 46.)  The Court now grants that dismissal.

**I.**  **Factual Background**

---

[1] Plaintiff's claim for civil conspiracy against defendants Terry Braskett and Kristin Eckel is not at issue in this order.

1

The following factual background is drawn in part from the Court's prior order (doc. 37): plaintiff was hired by the Teays Valley Local School District to serve as the principal of Asheville Elementary School for the 2006-2007 and 2007-2008 school years. (Doc. 1, ¶ 12.) As principal, plaintiff came into conflict with some school employees including Terry Braskett, the school's secretary, Kristin Eckel, an educational aide, and teacher Shannon Bumgarner. Id. ¶¶ 8-10, 14.

This conflict came to a head in the spring of 2007 when the school administered standardized achievement tests to third, fourth, and fifth graders. Id. ¶ 16. According to plaintiff, the defendants used the test administration as an opportunity to falsely accuse her of tampering with the tests, and ultimately to remove her from her position as principal. Id. ¶ 17. Plaintiff alleges that though Eckel and Braskett had no formal role in administering the tests, they collected and stored the test books at the end of each day of testing. Id. ¶ 21. Allegedly in violation of state testing procedures, Eckel and Braskett blocked off a portion of school hallway in order to alter student tests unobserved. Id. ¶ 22. They claimed that they were erasing stray marks, but plaintiff claims they were creating erasure marks to give the impression that the tests had been altered–plaintiff was later removed on suspicion that *she* had made such alterations. Id.

Ultimately, allegations against her lead to plaintiff's removal as principal. She was placed on administrative leave, id. ¶¶ 27-30, and her contract was nonrenewed in March 2008, ending her employment with the school district, id. ¶ 30. At issue here is whether defendants Bumgarner, Thompson, Sheets, and the school district engaged in a civil conspiracy.

To support her allegation that defendant Bumgarner joined a conspiracy, plaintiff alleges that Bumgarner, like other defendants, sought to falsely implicate plaintiff in a fraudulent testing scheme. Bumgarner allegedly observed that plaintiff was at the school after hours, and on that basis alone

contacted defendant Sheets with the accusation of fraud. (Doc. 1 ¶ 23.) "Then, without any reason for doing so, and in clear violation of Ohio Department of Education testing procedures, she claimed to have reviewed her students' test papers between phases of the test's administration. She claimed to have identified erasure marks that the students themselves had not made." Id. Plaintiff alleges that these actions by Bumgarner coincide with defendants Braskett and Eckel attempting to create suspicious erasure marks on students' tests. (Doc. 47 at 3.) Plaintiff alleges that defendant Bumgarner joined Braskett and Eckel in a scheme in which they arranged tests in a particular way, hoping to demonstrate that Carna moved the tests overnight.[2] (Doc. 1 ¶ 22.) Following their accusations and investigation, plaintiff alleges that Bumgarner, Braskett, and Eckel "described their suspicions of Ms. Carna to media sources . . . ." (Doc. 1 ¶ 34.) The trio also allegedly created written statements conveying suspicion of plaintiff, but omitting important and potentially exculpatory information. Plaintiff alleges that Bumgarner, Braskett, and Eckel, were "close friends . . . who resisted the Plaintiff's authority as Principal from the beginning . . . ." (Doc. 1 ¶ 14.) With this motivation, they allegedly conspired "to harm [plaintiff's] reputation, present her in a false and harmful light, and procure her removal from her position and the termination of her principal's contract." (Doc. 1 ¶ 50.)

Defendants Thompson and Sheets, the assistant superintendent and superintendent of the school district, were somewhat less closely involved in the investigation and exposure of the alleged testing fraud. Plaintiff alleges that Thompson was a close friend of Eckel, Braskett, and Bumgarner, and knew that they had experienced friction with the plaintiff, yet never adequately questioned or

---

[2] Plaintiff contends that "this 'trap' was nonsensical, as all three conspirators knew custodians had access to the room in which the [test] crates were stored." (Doc. 47 at 3.)

investigated their allegations against plaintiff. He also refused to examine surveillance tapes or interview potentially exculpatory witnesses. (Doc. 1 ¶¶ 25-29.) Thompson "abruptly removed the Plaintiff from her duties without any hearing or investigation, and actively worked, along with Defendant Sheets, to push the Ohio Department of Education to suspend the Plaintiff's educational licensure using false statements about the plaintiff." (Doc. 47 at 4.)

Defendant Sheets allegedly encouraged Bumgarner to track erasure marks on tests. (Doc. 1 ¶ 23.) Like Thompson, he refused to consider exculpatory evidence or investigate alleged violations of testing procedure by employees other than plaintiff. He signed allegedly false statements to the Ohio Department of Education that Thompson had prepared and made allegedly false statements to local media. (Doc. 1 ¶ 36.)

## II.     Legal Standard

A district court may consider dismissal of a claim *sua sponte*, and may dismiss a claim after notifying the parties of its intent to do so and providing them with an opportunity to be heard on the issue. See Tingler v. Marshall, 716 F.2d 1109, 1112 (6th Cir. 1983). Here, the Court considers, *sua sponte*, whether the civil conspiracy claim against defendants Bumgarner, Thompson, Sheets, and the Teays Valley Local School District are subject to dismissal for failure to state a claim on which relief may be granted. See Fed. R. Civ. Pro. 12(b)(6).

Federal Rule of Civil Procedure 8(a) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When considering whether to dismiss a pleading for failure to state a claim, a court must determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp.

4

v. Twombly, 550 U.S. 544, 570 (2007)). A court should construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true. Iqbal, 556 U.S. at 679; Erickson v. Pardus, 551 U.S. 89, 93-94 (2007); Twombly, 550 U.S. at 555-56.

Despite this liberal pleading standard, the "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678; see also Twombly, 550 U.S. at 555, 557 ("labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do," nor will "naked assertion[s]" devoid of "further factual enhancements"); Papasan v. Allain, 478 U.S. 265, 286 (1986) (a court is "not bound to accept as true a legal conclusion couched as a factual allegation"). The plaintiff must provide the grounds of his entitlement to relief "rather than a blanket assertion of entitlement to relief." Twombly, 550 U.S. at 556 n.3. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679.

When the complaint does contain well-pleaded factual allegations, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678. Though "[s]pecific facts are not necessary," Erickson, 551 U.S. at 93, and though Rule 8 "does not impose a probability requirement at the pleading stage," Twombly, 550 U.S. at 556, the factual allegations must be enough to raise the claimed right to relief above the speculative level and

to create a reasonable expectation that discovery will reveal evidence to support the claim. Iqbal, 556 U.S. at 678-79; Twombly, 550 U.S. at 555-56. This inquiry as to plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]'– 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

**III.    Analysis**

"A civil conspiracy is a 'malicious combination of two or more persons to injure another person or property, in a way not competent for one alone.'" Ohio Bureau of Workers' Comp. v. MDL Active Duration Fund, Ltd., 476 F.Supp.2d 809, 827 (S.D. Ohio 2007) (quoting Kenty v. Transamerica Premium Ins. Co., 72 Ohio St.3d 415, 419, 640 N.E.2d 863 (1995)). "Thus, to establish a claim of civil conspiracy, plaintiff must allege: (1) a malicious combination; (2) of two or more persons; (3) injury to person or property; and (4) existence of an unlawful act independent from the actual conspiracy." Id.

The "malicious combination" element does not require express agreement between conspirators, "but only a common understanding or design, even if tacit, to commit an unlawful act." Gosden v. Louis, 687 N.E.2d 481, 496 (Ohio App. 1996). Two or more individuals acting together in a manner that naturally leads to an unlawful goal may provide sufficient evidence of the common design necessary to prove a conspiracy. Id. But see Spadafore v. Gardner, 330 F.3d 849, 854 (6th Cir. 2003) ("The [plaintiffs] have submitted no evidence, circumstantial or otherwise, suggesting that the defendants had a single plan when they made the allegedly false statements."). In reaching this common design, the conspirators must act "purposely, without a reasonable or lawful excuse, to the

injury of another." Gosden, 687 N.E.2d at 496 (quoting Pickle v. Swinehart, 166 N.E.2d 227, 229 (Ohio 1960)).

Regarding defendant Bumgarner, plaintiff's allegations are insufficient to state a plausible claim that she had a "common understanding or design, even if tacit" with defendants Braskett and Eckel.  Most of the allegations against Bumgarner simply state that she took certain actions at the same time that defendants Braskett and Eckel took others.  Moreover, the actions that Bumgarner is alleged to have taken do not plausibly suggest an unlawful goal that is shared with others.  To the contrary, the fact that Bumgarner sought to investigate whether students made erasure marks on their tests and whether someone was tampering with the tests at night does not suggest an unlawful purpose, much less an unlawful purpose shared with Braskett and Eckel.  Unlike Braskett and Eckel, the actions that plaintiff alleges that Bumgarner took suggest a goal of investigating and discovering fraud–not creating it.  For Braskett and Eckel, on the other hand, plaintiff's allegations clearly suggest coordinated action with an unlawful motive–plaintiff alleges that Braskett and Eckel secretly made erasure marks on tests in an attempt to frame the plaintiff.  Beyond factual allegations that do not suggest a malicious combination to reach an unlawful goal, plaintiff's other allegations against Bumgarner are conclusory and unsupported by factual allegations–for example, that she shared a motive with Braskett and Eckel.  Conclusory allegations coupled with actions that do not suggest a shared unlawful goal are insufficient to make it plausible that defendant Bumgarner conspired with defendants Braskett and Eckel.

The allegations related to defendants Thompson and Sheets' involvement in the alleged conspiracy are limited to a shared motive and independent actions that allegedly promoted the shared goal.  Nothing in the complaint suggests that Thompson or Sheets worked with other defendants,

coordinated their action, or tacitly or overtly combined with them to reach an unlawful goal. To find such an understanding from the plaintiff's allegations would require pure speculation.

Finally, the two remaining potential conspirators, defendants Braskett and Eckel, allegedly acted together to make false erasure marks on tests in an attempt to implicate the plaintiff in testing fraud. The only way the defendant school district could be implicated in the conspiracy is if one of the two individual conspirators acted within the scope of her employment while the other did not. But the allegations on which the potential conspiracy rests–the creating of false erasure marks on students' tests–could not plausibly be within the scope of either defendant's employment. Thus the complaint does not make the conspiracy claim against the school district plausible.

## IV.     Conclusion

For the foregoing reasons, plaintiff's civil conspiracy claim against defendants Bumgarner, Thompson, Sheets, and Teays Valley Local School District is dismissed.


        IT IS SO ORDERED.

                                                S/ James L  Graham
                                                James L. Graham
                                                UNITED STATES DISTRICT JUDGE

Date: September 25, 2012